[Cite as *State v. C.D.S.*, 2021-Ohio-4492.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 20AP-355<br>(C.P.C. No. 18CR-1256) |
| [C.D.S.], | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 21, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Sheryl L. Prichard,* for appellee. **Argued:** *Sheryl L. Prichard.*

**On brief:** *Carpenter, Lipps & Leland, LLP, Kort Gatterdam*, and *Eric P. Henry*, for appellant. **Argued:** *Kort Gatterdam*.

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Defendant-appellant, C.D.S., appeals a judgment of the Franklin County Court of Common Pleas convicting him, pursuant to a jury verdict, of one count of kidnapping and five counts of rape. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On March 15, 2018, a Franklin County Grand Jury indicted appellant of one count of kidnapping in violation of R.C. 2905.01 (Count 1), a felony of the first degree; and five counts of rape in violation of R.C. 2907.02, felonies of the first degree (Counts 2 through 6). All of the offenses alleged in the indictment involve sexual abuse allegations related to a minor child, L.A., between March 29, 2016 through March 28, 2017. Appellant entered a not guilty plea on March 28, 2018.

{¶ 3} The case proceeded to a jury trial on February 24, 2020. At the onset of the proceedings, the trial court addressed the outstanding plea offer by the state and ensured

appellant intended to proceed with trial. The trial court entertained a statement by appellant regarding his trial counsel and investigator. According to appellant, trial counsel failed to meet with him as often as he would like and stated, "I'm willing to do my case pro se or try to get pro bono to get my case heard the correct way to where everybody's informed, such as myself and my family, and not left in the dark about things until a couple hours before a court date." (Feb. 24-25, 2020 Tr. Vol. I at 9.) The trial court advised appellant not to proceed pro se as these were serious offenses. The trial court explained its expectations as to any litigant, whether an attorney or an individual representing himself pro se, to comport with rules of evidence and criminal procedure. The trial court stated that appellant has had multiple court dates and multiple continuances noting that prior to another trial date appellant terminated his previous attorney and retained the present counsel. (Tr. Vol. I at 10.) Given the age and seriousness of the case, the trial court was not inclined to continue the matter as it was time to proceed since the delay was becoming a disservice to the victim in the case. Appellant made no express request to represent himself, and the parties proceeded with voir dire. The following evidence was adduced at trial.

{¶ 4} The state first called G.B. to testify. G.B. is the mother of the three minor children involved in this case, S.A., T.RN., and L.A. G.B. testified that the girls have been in foster care on multiple occasions because of her drug and criminal history. G.B. stated that the fathers of the girls are not involved in their lives. The first time the children were in foster care was with M.W. In 2013, the children were placed with appellant and T.RL., neighbors that lived across the street from G.B. G.B. was allowed visitation during this time. G.B. stated that she is now employed, and the children are living with her at home. G.B. learned of L.A.'s allegations against appellant while housed in Franklin County Community Based Correctional Facility ("CBCF") in 2017. G.B. stated that she was not the legal custodian of the children at the time.

{¶ 5} Under cross-examination, G.B. acknowledged that she had made a claim that "[T.RN.] told me that [appellant] hit her in the nose and his son told me that [appellant] hit her in the nose, I called them." (Feb. 25-26, 2020 Tr. Vol. II at 278.) The incident was investigated, and the children were ultimately returned to T.RL. and appellant. G.B. stated that there was no prior indication from L.A. or the other girls of inappropriate behavior by appellant and T.RL. The children came home to live with G.B. in February 2018.

{¶ 6} E.P. testified she has been a foster parent for four years. E.P. testified generally about the responsibility of a foster parent and how the girls came to be in her care. On March 22, 2017, the children were placed with E.P., but they continued to visit with T.RL. and appellant. (Tr. Vol. II at 350.) According to E.P., the girls were "very nervous" before the first visit. (Tr. Vol. II at 295.) E.P. stated that on or about August 16, 2017, L.A. disclosed to her the sexual abuse by appellant. (Tr. Vol. II at 296.) E.P. stated that she reported the allegation. On September 12, 2017, E.P. took L.A. to Nationwide Children's Hospital.[1] The girls stayed with E.P. for nearly one year before returning to live with their mother. According to E.P., the girls wanted her to adopt them, and they did not trust their mother. (Tr. Vol. II at 365-69.)

{¶ 7} Dr. Megan Letson testified that she is a pediatrician at Nationwide Children's Hospital at the Center for Family Safety and Healing. Dr. Letson is board certified through the American Board of Pediatrics in both general pediatrics and child abuse pediatrics. Dr. Letson testified generally as to her evaluation of suspected child maltreatment and abuse. Dr. Letson explained the medical forensic interview process and how it is utilized in medical diagnosis and treatment. Dr. Letson testified that she performed an examination of L.A on September 12, 2017. The process took approximately two hours, and L.A. tested negative for all sexually transmitted diseases and no injuries were noted in the examination. No DNA samples were taken as the last contact occurred months prior to the examination. L.A. indicated a past history of suicidal ideation and a history of cutting her body. Dr. Letson indicated that her finding of a normal genital examination was still consistent with an allegation of sexual abuse as 90 to 96 percent of examinations of sexual abuse have normal findings. (Tr. Vol. II at 330.) On cross-examination, Dr. Letson acknowledged that she could not confirm that L.A. was sexually assaulted based on the physical exam alone. (Tr. Vol. II at 339-40.)

{¶ 8} L.A. testified that she previously lived with her mother before moving to foster care when she was four years old. (Tr. Vol. II at 378.) The last time L.A. was removed from her mother's home, L.A. went to live with T.RL. and appellant. L.A. lived with appellant for approximately three years before being removed in 2017. According to L.A.,

---

[1] Due to a scheduling conflict, E.P. was recalled for cross-examination after the testimony of Dr. Megan Letson.

the house included two bedrooms, a bathroom, a basement, a living room, and dining room. Initially, the girls all lived in the same bedroom. After approximately six months, L.A. made a room in the basement and the other two girls stayed upstairs. (Tr. Vol. II at 384.) The sisters were initially allowed to go to L.A.'s room in the basement before appellant forbid them from going down there. (Tr. Vol. II at 385.) L.A. stated that they were initially happy to live with appellant and T.RL., but the dynamic changed.

{¶ 9} L.A. testified that appellant began to sexually abuse her when she was 13 years old. (Tr. Vol. II at 387.) According to L.A., the first time was during movie night when appellant began to touch her body. Appellant's actions eventually progressed to oral sex then vaginal penetration with his penis. (Tr. Vol. II at 388.) L.A. stated that this would mostly occur in the basement. L.A. testified that the first instance of rape occurred when she was cleaning her room in the basement, and "he climbed on top of me and he held my head into a pillow. That's when he started." (Tr. Vol. II at 389.) L.A. testified that appellant proceeded to put his penis into her vagina. L.A. described other times appellant would perform oral sex by "put[ting] his mouth to [her] vagina or like if [her] mouth is on his * * * penis." (Tr. Vol. II at 392.) L.A. stated that appellant would force off her pants and underwear. (Tr. Vol. II at 455.) Appellant would hold her down by her arms onto the bed and hold her head on the pillow. (Tr. Vol. II at 394-95.) L.A. also testified that appellant on multiple occasions would use his hands to touch and penetrate her vagina with his fingers. (Tr. Vol. II at 417-18.) According to L.A., this would occur in the basement when everyone was asleep, at school, or when T.RL. was at the doctor. L.A. stated that appellant used a condom at first but stopped and made her get on birth control. (Tr. Vol. II at 397-98.) L.A. testified that the sexual abuse would cause her pain and vaginal bleeding. (Tr. Vol. II at 400.) L.A. testified that this continued on multiple occasions up until she was removed from the home to live with E.P.

{¶ 10} L.A. stated that the sexual abuse primarily occurred downstairs and upstairs only "[m]aybe like twice." (Tr. Vol. II at 393.) On one of those occasions, L.A. had a doctor's appointment and stayed home from school. According to L.A., appellant raped her vaginally with his penis while in the living room on the couch. (Tr. Vol. II at 393.) L.A. testified that she could not tell her sisters and dealt with the pain through self-harm by cutting. (Tr. Vol. II at 396.) L.A. stated that she did not want this incident to happen and

did not know when it would occur.  L.A. testified that she was not permitted to stay upstairs with her sisters and that she was scared of appellant.  (Tr. Vol. II at 401, 418.)

{¶ 11}  When L.A. lived with E.P., there was a day she was having a difficult time after school, and E.P. calmed her down while they talked in the bathroom.  L.A. testified that she then disclosed to E.P. the sexual abuse by appellant.  After speaking with E.P., L.A. stated that she felt relieved to have told someone that she trusted.  (Tr. Vol. II at 408.) After L.A. disclosed the sexual abuse, the visits with T.RL. and appellant stopped.  (Tr. Vol. II at 406.)   L.A. described the interview at Nationwide Children's Hospital and identified appellant in the courtroom.  (Tr. Vol. II at 416.)  L.A. denied any desire at that time to live with G.B.  (Tr. Vol. II at 413-16.)

{¶ 12}  Under cross-examination, L.A. stated she lived with T.RL. and appellant before being placed with M.W. in Reynoldsburg.  L.A. was removed from the home while her sisters stayed.  (Tr. Vol. II at 433.)  L.A. was placed in another foster home before going back to appellant and T.RL.  (Tr. Vol. II at 433.)  L.A. conceded that it was her desire at that time to return to appellant's and T.RL.'s home where she stayed for approximately three years. (Tr. Vol. II at 433-34.)  L.A. acknowledged that she did not speak to T.RL., her sisters, counselors, or anyone at school about the rapes until after speaking with E.P.  L.A. noted that appellant has a scar on his stomach that runs horizontally below his navel.  (Tr. Vol. II at 434.)

{¶ 13}  During re-direct examination, L.A. clarified the timeline of events stating that she was initially placed with appellant and T.RL. in 2013 when she was 11 years old. (Tr. Vol. II at 449.)  L.A. lived with M.W. toward the beginning of placement and then with appellant and T.RL. after the completion of the case plan.  (Tr. Vol. II at 450-51.)  The allegations against appellant took place in 2016 when she was 14 years old.  (Tr. Vol. II at 451.) L.A. was placed with E.P. in 2017 when she was 15 years old.  L.A. stated her desire to live with appellant and T.RL. was before returning to the home and does not want to stay with them ever again.

{¶ 14}  T.RN. testified that she lived with her sisters at T.RL. and appellant's home for approximately three years.  T.RN. stated there were a lot of arguments and not much freedom.  (Tr. Vol. II at 464.)  T.RN. stated all the girls lived in a single room before "[Appellant] moved [L.A.] downstairs."  (Tr. Vol. II at 465.)  T.RN. stated that she was not

permitted to go into the basement. T.RN. would only go to the basement to visit L.A. when appellant was gone. (Tr. Vol. II at 466.) According to T.RN., L.A. never disclosed to her what happened during that time. When the girls lived with E.P., they would still visit appellant and T.RL. T.RN. stated that appellant withheld the girls' clothes and would only give them a few items each visit. (Tr. Vol. II at 470.) During cross-examination, T.RN. testified that T.RL. and appellant would argue and get into physical confrontations. (Tr. Vol. II at 473.) T.RN. noted that L.A. also wanted her own room at the time. (Tr. Vol. II at 474.)

{¶ 15} S.A. testified that initially living with appellant and T.RL. was good but went downhill. (Feb. 27 to Mar. 2, 2020 Tr. Vol. III at 499.) After a while, appellant became aggressive toward T.RN. and her. (Tr. Vol. III at 500.) S.A. stated that she was not allowed to go to the basement to visit L.A. and would go down there only after appellant left the house. (Tr. Vol. III at 508.) S.A. stated that appellant would comment about her body stating, "[her] boobs and like they were small. He would make comments about [L.A.]'s body figure were bigger than ours and better looking than ours." (Tr. Vol. III at 508.) According to S.A., L.A. was depressed living with appellant and T.RL. and excited about leaving their house. (Tr. Vol. III at 510.)

{¶ 16} On cross-examination, S.A. acknowledged that T.RL. and appellant would take them to family events and out for activities. S.A. stated that T.RL. would not go to the basement, and L.A. and appellant would do the laundry. (Tr. Vol. III at 520.) S.A. stated that when she got into some trouble at school, T.RL. and appellant would yell at her. In response to a question of whether she spoke with anyone at school about issues at home, S.A. testified appellant hit her before going to school, and she had bled through her pants, which elicited questions from the counselor. (Tr. Vol. III at 522.)

{¶ 17} Prior to the testimony of Kerri Wilkinson, a forensic interviewer and licensed social worker, the state informed the court that it intended to play the video interview between L.A. and Wilkinson, and it included potentially prejudicial statements toward appellant. To remedy this issue, the state provided a redacted version of the interview without the identified portions. There was no objection to the state's use of the video at that time.

{¶ 18} Wilkinson testified that she is a forensic interviewer and licensed social worker at Nationwide Children's Hospital. Wilkinson interviews children when there are allegations of abuse. Wilkinson testified that when a patient comes to the center, the child will go through registration, their medical information is taken, an interview, and then a medical exam is done by a physician or nurse practitioner. (Tr. Vol. III at 543-44.) Wilkinson testified as to conducting an interview with L.A. on September 12, 2017. (Tr. Vol. III at 552-53.) Wilkinson stated the forensic interview was recorded and identified the video as an exhibit in the courtroom. The video was played for the jury. Wilkinson resumed her testimony and noted that it is common for children to disclose information over time. "So disclosure is a process. So it's certainly not uncommon for a child to come in during the interview and give us information about what has happened to his or her body and then when that child starts counseling -- as an example, when they start to develop [a] relationship with someone over, you know, over time there is certainly a chance that that child or that patient may give more information about things that have happened to their body." (Tr. Vol. III at 562.)

{¶ 19} The state rested its case and moved to admit its exhibits. Appellant's counsel objected to the admission of the evidence arguing that he was not allowed an opportunity to question L.A. about the video. The trial court admitted the exhibits over appellant's objection. The trial court noted that the video was provided in discovery and appellant could have questioned L.A. about the video at that time. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29 arguing that the state had failed to meet its burden of proof. Appellant argued there was no physical evidence and contended that the case was based on hearsay statements. The trial court overruled the motion finding that there was sufficient evidence in the record that the state had met its burden at that time.

{¶ 20} Paul Bailey testified that he was the principal at Westmoor Middle School when S.A. and T.RN. were students. (Tr. Vol. III at 603.) L.A. was not enrolled at the school during this time. Bailey stated that appellant and T.RL. attended parent-teacher conferences, and he did not observe any signs of physical abuse or neglect in S.A. or T.RN. at school. On cross-examination, Bailey conceded he does not have a specific recollection of how many parent-teacher conferences appellant and T.RL. attended or recall meeting

with them at any of these parent-teacher nights.  Bailey also acknowledged that signs of abuse do not always manifest in visible ways.

{¶ 21} Prior to reconvening the jury for the start of appellant's case, the state informed the court that it had discovered appellant violated the separation order for anyone to not speak about the specifics of the trial with potential witnesses.  The state argued that appellant had made multiple phone calls to potential witnesses since the beginning of the trial.   The state identified telephone conversations between appellant and potential witnesses such as his mother, M.G., and T.RL. that exceeded the separation order.  The state asked that the witnesses not be able to testify, or alternatively, that the trial court provide a jury instruction.  The trial court ruled that there was a violation of the previous order of separation of witnesses reasoning that appellant was aware of the separation order, and appellant knew he should not speak to potential witnesses or attempt to get information to the potential witnesses.  (Tr. Vol. III at 635.)  The trial court found that it would be within his power to exclude the witnesses but instead elected to provide an instruction to the jury. Prior to T.RL.'s testimony, the trial court provided the jury the following instruction:

> Ladies and gentlemen of the jury, prior to the beginning of this trial, the Court placed an order called a separation of witnesses. The order instructs the parties that any person that will testify is to remain outside the courtroom until called to testify. The order also instructs that witnesses are not to discuss their testimony with anyone while this case is still pending. * * * This order was violated. The witness about to testify was provided information about witnesses and evidence that has already been presented in this courtroom. You may use this information to test the credibility or believability of this witness' testimony.

(Tr. Vol. III at 643-44.)

{¶ 22} T.RL. testified that she has been married to appellant since 2012 at which time she lived across the street from G.B. and the girls.  T.RL. stated that she obtained temporary custody of the children and ended up getting full custody in fall 2014.  (Tr. Vol. III at 650, 654.)  The custody lasted for three and one-half years.  (Tr. Vol. III at 654.)  T.RL. stated that she took the girls to see G.B. at least once a week.  (Tr. Vol. III at 658.)  According to T.RL., all three girls lived in one room before L.A. requested that she move to the

basement. T.RL. testified that she took the girls on activities like roller skating and watched movies. T.RL. stated that the decision to put L.A. on birth control was a family decision. (Tr. Vol. III at 666.) After the girls were removed from custody, T.RL. stopped visiting the girls because they would not commit to when they were coming home, and she was never denied visits by children services. (Tr. Vol. III at 670.) According to T.RL., she did not know anything about the allegations against her husband until law enforcement executed a warrant for his arrest. According to T.RL., she was always home unless she had a doctor's appointment. T.RL. stated that the girls were first removed based on an allegation by G.B., then several years later, they were removed by children services, but T.RL. and appellant were allowed visitation for several months. (Tr. Vol. III at 701.)

{¶ 23} On cross-examination, T.RL. conceded that appellant and L.A. did most of the laundry in the house since she has a foot injury. T.RL. stated that she only did laundry in the basement a few times because appellant complained she did not use enough bleach. (Tr. Vol. III at 708-09.) T.RL. acknowledged that she spoke with appellant as to what witnesses testified to in court. (Tr. Vol. III at 714.)

{¶ 24} The parties entered a stipulation regarding the testimony of Ciera Johnson. Johnson was a case worker for the National Youth Advocacy Program and supervised the case involving G.B. and her children in 2014. Johnson had contact with appellant and T.RL., and the girls were happy to live with them and had no complaints at that time. (Tr. Vol. III at 728.)[2]

{¶ 25} Appellant rested and moved to admit his exhibits, which were admitted without objection from the state. Appellant at that time moved for judgment of acquittal pursuant to Crim.R. 29, which was denied by the trial court.

{¶ 26} On March 5, 2020, the jury returned guilty verdicts on all six counts. The trial court ordered a presentence investigation and set the case for a sentencing hearing. On June 24, 2020, the trial court imposed a term of incarceration of 8 years on 3 of the rape convictions to run consecutively and the remaining counts to run concurrently, for a total term of 24 years as well as classifying appellant as a Tier III sexual offender.

{¶ 27} Appellant filed a timely appeal on July 15, 2020.

---

[2] Counsel for appellant objected to not allowing the case to be continued to allow Johnson to appear at trial, which was overruled by the trial court.

## II. ASSIGNMENTS OF ERROR

{¶ 28} Appellant assigns the following as trial court error:

[1.] THE ADMISSION OF OTHER-ACTS TESTIMONY AND EVIDENCE VIOLATED EVIDENCE RULES 403 AND 404 AND APPELLANT'S RIGHTS TO DUE PROCESS AND TO A FAIR TRIAL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

[2.] THE ADMISSION OF HEARSAY FROM THE ALLEGED VICTIM, WHEN THE ALLEGED VICTIM ALSO TESTIFIED, CONSTITUTED IMPROPER BOLSTERING, WAS NEEDLESSLY CUMULATIVE, AND VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND TO A FAIR TRIAL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

[3.] THE TRIAL COURT ERRED BY REFUSING TO ALLOW THE IMPEACHMENT OF THE ALLEGED VICTIM REGARDING PRIOR FALSE ACCUSATIONS OF SEXUAL MISCONDUCT CONTRARY TO APPELLANT'S STATE AND FEDERAL CONSTIUTIONAL RIGHTS TO PRESENT A DEFENSE, TO CROSS EXAMINATION, AND TO DUE PROCESS.

[4.] APPELLANT WAS DEPRIVED OF HIS RIGHTS TO A FAIR TRIAL AND DUE PROCESS CONTRARY TO THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSITUTION BECAUSE A DOCTOR PRESENTED OPINION TESTIMONY INDICATING THE ALLEGED VICTIM WAS NOT LYING ABOUT THE INCIDENT.

[5.] THE ADMISSION OF EVIDENCE AND INSTRUCTION TO THE JURY REGARDING APPELLANT AND A DEFENSE WITNESS VIOLATING THE TRIAL COURT'S ORDER FOR THE SEPARATION OF WITNESSES VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND TO A FAIR TRIAL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

[6.] THE TRIAL COURT ERRED BY FAILING TO PROVIDE MATERIAL INFORMATION TO DEFENSE COUNSEL FROM CONFIDENTIAL RECORDS THEREBY DEPRIVING APPELLANT OF DUE PROCESS AND A FAIR TRIAL.

[7.] THE TRIAL COURT ERRED BY NOT CONDUCTING A SUFFICIENT INQUIRY INTO APPELLANT'S SELF-REPRESENTATION REQUEST CONTRARY TO THE UNITED STATES AND OHIO CONSTITUTIONS.

[8.] APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

[9.] THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION BASED ON INSUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.

## III.  LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 29}  In his first assignment of error, appellant argues the trial court erred in the admission of other-acts testimony that violated Evid.R. 403 and 404.

{¶ 30} As a preliminary matter, some evidence identified in appellant's first assignment of error was allowed over trial counsel's objection whereas other evidence was never objected to during trial.  As the standard of review changes based on whether appellant preserved the issue at trial, we will address each piece of evidence through the requisite standard of review.

### 1. Other-Acts Evidence (Objected to at Trial)

{¶ 31} Evidence of other acts of a defendant, distinct from those for which the defendant is on trial, are generally not admissible when the intent is to show the defendant's character, or propensity to commit crime.  *See State v. Armengau*, 10th Dist. No. 14AP-679, 2017-Ohio-4452, ¶ 69, citing Evid.R. 404(B); R.C. 2945.59; *State v. Curry*, 43 Ohio St.2d 66 (1975); *State v. DeMarco*, 31 Ohio St.3d 191 (1987).  Such evidence may, however, be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Armengau* at ¶ 70, citing Evid.R. 404(B).  The Supreme Court of Ohio has found that Evid.R. 404(B) and

R.C. 2945.59 are to be read in conjunction with each other. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695. In *Williams*, the Supreme Court has set forth a three-part test for a trial court to conduct in determining the admission of other-acts evidence:

> The court must consider (1) whether the other-acts evidence is relevant under Evid.R. 401, i.e., whether it tends to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence, (2) whether the evidence is presented to prove a person's character to show conduct in conformity therewith, or whether it is presented for a legitimate other purpose, and (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, Evid.R. 403. However, "the rule affords broad discretion to the trial judge regarding the admission of other acts evidence." [*Williams*] at ¶ 17.

*State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶ 139, citing *Williams* at ¶ 20.

{¶ 32} Generally, the admission of other-acts evidence under Evid.R. 404(B) falls within the broad discretion of the trial court. *State v. Caldwell*, 10th Dist. No. 18AP-814, 2019-Ohio-3015, ¶ 35. Abuse of discretion requires more than an error of law or judgment, but implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). This court will not reverse an evidentiary decision outside an abuse of discretion that resulted in material prejudice. *Id.*, quoting *State v. Peterson*, 10th Dist. No. 12AP-646, 2013-Ohio-1807, ¶ 21. "[A]n improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 32; *State v. Williams*, 6 Ohio St.3d 281, 290 (1983), quoting *Harrington v. California*, 395 U.S. 250, 254 (1969).

{¶ 33} Evid.R. 403(A) states: "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The trial court is granted broad discretion in discerning the probative value of evidence against the potential danger of unfair prejudice against a defendant under an Evid.R. 403 analysis. *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 171. A trial court's determination under Evid.R. 403 is also reviewed

under an abuse of discretion analysis.  *Id.*, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 40.

{¶ 34}  At trial, appellant objected to the admission of the state's exhibit 2A after the video had been played for the jury arguing he could not cross-examine the witness with the video.  The trial court noted that appellant had the video in discovery and could have used it to cross-examine L.A. when she testified.  We find the trial court's reasoning reasonable as there was no preclusion against appellant utilizing the exhibit during L.A.'s testimony.  To claim after the fact that such an opportunity was not available is disingenuous at best.  Moreover, the state, on its own accord, redacted portions of the video prior to its use at trial.  This was discussed with the trial court giving appellant ample opportunity to interject as to parts of the video it perceived as prejudicial.  As such, the trial court did not abuse its admission on that basis.

{¶ 35}  Next, appellant argues the trial court erred in allowing other-acts evidence during S.A.'s testimony.  S.A. testified to the environment in the home and stated that appellant hit her and her sister, T.RN.  The record indicates that trial court sustained the objection and instructed the jury to disregard S.A.'s testimony that she was choked.  After careful review of the record, we find that the trial court did not abuse its discretion.  S.A.'s initial testimony that there were disputes in the home provided a permissible purpose for showing the environment at the home and whether the children wanted to be in the home, which was at issue during the trial.  As to the objected testimony, the trial court instructed the jury to disregard these statements.  The jury presumed to follow the court's instruction to disregard evidence.  *State v. Walburg*, 10th Dist. No. 10AP-1087, 2011-Ohio-4762, ¶ 53, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 39.  While the initial objected to testimony was not struck from the record, the statement was brief and would constitute harmless error on review as, after the tainted evidence is removed, the remaining evidence of guilt is overwhelming.  Accordingly, the trial court did not abuse its discretion as to its ruling on the objected to other-acts testimony.

### 2. Other-Acts Testimony (Not Objected to at Trial)

{¶ 36}  Appellant argues that the trial court erred in allowing testimony that constituted other-acts evidence throughout the trial.  In the instances we will examine, counsel for appellant failed to object to the testimony at issue.  Consequently, the objection

was not preserved on appeal absent a finding of plain error. Crim.R. 52(B) states: "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error does not occur unless, "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 97 (1978). This court will only recognize plain error under exceptional circumstances, with the utmost caution, and only to prevent a miscarriage of justice. *State v. Collins*, 10th Dist. No. 20AP-119, 2021-Ohio-1663, ¶ 11. " 'For an error to be a "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial.' " *Id.*, quoting *State v. J.L.H.*, 10th Dist. No. 19AP-369, 2019-Ohio-4999, ¶ 11, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). In order to constitute plain error, "the error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection." *State v. Gullick*, 10th Dist. No. 13AP-26, 2013-Ohio-3342, ¶ 3, citing *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995).

{¶ 37} The Supreme Court in assessing the "substantial rights" prong has found that a defendant asserting plain error must show a "reasonable probability" that an identified obvious error resulted in prejudice, i.e., that " 'the probability of a different result is "sufficient to undermine confidence in the outcome" of the proceeding.' " (Internal citation omitted.) *State v. Williams*, 10th Dist. No. 19AP-824, 2021-Ohio-3006, ¶ 53, quoting *State v. Battle*, 10th Dist. No. 18AP-728, 2019-Ohio-2931, ¶ 22-23, quoting *Tench* at ¶ 218; *see also State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 105, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996).

{¶ 38} First, appellant alleges that the statement that appellant would argue and cheat on his wife in exhibit 2A was improper other acts testimony. In addition to the potential need to know about appellant's promiscuity for medical diagnosis and treatment, *infra* at ¶ 54-56, the statement is intertwined with the charged conduct at issue. Other-acts testimony is often intertwined with charged conduct and is needed often to provide a "complete picture of what occurred." *State v. Wilkinson*, 64 Ohio St.2d 308 (1980). The Supreme Court stated background evidence was admissible if the "other acts" were

"inextricably related" to the crime charged and if the "challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime." *State v. Thompson*, 66 Ohio St.2d 496, 498 (1981), citing *Wilkinson*. Here, the allegation of appellant having affairs, or the arguments between appellant and T.RL., provide immediate background of the alleged act that provides background for the charged offenses. *State v. Grimm*, 12th Dist. No. CA2018-10-071, 2019-Ohio-2961 (finding statements by defendant that he wanted to fight other people and fled the scene provided the immediate background of the alleged act). L.A. alleged that appellant would get into fights with T.RL. then leave the home. When appellant came home he would sneak into the basement to initiate the sexual abuse of L.A. This describes appellant's scheme, plan, motive, and opportunity for the abuse. Regardless, even if the other-acts evidence presented at trial was erroneous, appellant cannot overcome plain error as the verdict in this case would not have changed by the exclusion of the allegations of arguments in the home. *State v. Lyons*, 9th Dist. No. 03CA0023-M, 2003-Ohio-5783, ¶ 29 (finding admission of evidence of previous fights was erroneous but harmless pursuant to Crim.R. 52 based on the weight of the evidence against defendant).

{¶ 39} Next, appellant contends the trial court erred in allowing L.A. to testify that appellant showed her pornography and that appellant asked her to obtain nude pictures of her friends. We disagree that this constitutes plain error. Testimony as to appellant showing L.A. nude photographs indicates a continuing course of sexual activity with L.A. that was relevant to and used for the purpose of demonstrating appellant's opportunity, plan, and his "grooming" of L.A. for later sexual activity. " 'Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity.' " *Williams* at ¶ 20, quoting *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir.2011). These statements are relevant as they show how appellant normalized sexual behavior. It is well-established law in Ohio that testimony as to appellant's grooming of the victim is relevant information for a non-propensity purpose. *See Armengau* at ¶ 72; *State v. Thomas*, 2d Dist. No. 27362,

2018-Ohio-4345, ¶ 32.[3]  Therefore, we find no error as to L.A.'s testimony regarding pornography and nude photographs.

{¶ 40} Appellant next argues that there were occasions of sexual abuse recounted by L.A. that were not charged in the indictment.  Ohio appellate courts have found that a trial court did not error in permitting a child victim to testify as to unindicted sexual abuse because the testimony was minimal, vague, and did not prejudice the appellant.  *State v. Hernandez*, 8th Dist. No. 104976, 2018-Ohio-738, ¶ 50; *Thomas* at ¶ 58 (finding the trial court did not err in allowing testimony from the victim as to the unindicted acts at issue were not extensively discussed, minimal, and vague).  Here, L.A. stated that she could not be sure how many times appellant raped her while she lived at his home.  The statements were often vague and minimal to the charged offenses.  These allegations were also inextricably linked to the charged offenses as they were part of the same scheme or plan of abuse.  Given the references to uncharged offenses were vague and minimal we cannot say allowing this testimony constitutes plain error.

{¶ 41} Appellant argues that the testimony of his past sexual activity violates R.C. 2907.02(D), commonly referred to as "Ohio's rape shield law," which controls the introduction of evidence related to sexual history of either the victim or defendant in a sex offense case.  The statute states as to evidence of a defendant's past sexual activity reads:

> Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

R.C. 2907.02(D).

---

[3] We note that the use of pornography was also potentially permissible for medical treatment and diagnosis. *State v. Watts*, 10th Dist. No. 15AP-951, 2016-Ohio-5386, ¶ 23 (finding that to the extent that statements related to a child's exposure to pornography can be considered a form of sexual abuse, the statements are relevant to the child's treatment and diagnosis).

{¶ 42} R.C. 2945.59 provides that:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ 43} It is well-settled law that R.C. 2945.59 must be read in harmony with Evid.R. 404(B). *Williams*, 2012-Ohio-5695, at ¶ 16. While there is a statutory presumption that past sexual conduct by a defendant may not be admitted, the statute is subject to the same exceptions as other evidence under Evid.R. 404(B) and R.C. 2945.59. *Armengau* at ¶ 78-79. For the reasons given as to the use of such evidence under Evid.R. 404(B) and R.C. 2945.59, the testimony of appellant's prior sexual conduct did not violate the rape shield statute or constitute plain error.

{¶ 44} Appellant relies on *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440. A brief review is instructive. In *Hartman*, the defendant was charged with raping an adult female acquaintance. The prosecutor introduced evidence that the defendant sexually abused his stepdaughter when she was a child. The Supreme Court affirmed the court of appeals reversal that other-acts evidence should not have been admitted at trial.

{¶ 45} The present case is distinguishable from *Hartman* as the other acts described at trial occurred with L.A. or based on her knowledge from living with appellant. The acts introduced in *Hartman* were wholly unrelated and several years apart.

{¶ 46} We do note that trial counsel for appellant not only did not object to purported other-acts evidence but, in fact, used it as part of its strategy in the case. Appellant's trial counsel asked S.A. if she spoke to anyone at school about issues in the home, and she stated she spoke to her counselor "after the last time [appellant] hit [her]" when she "was bleeding so bad, [she] bled through [her] pants and [the counselor] question[ed] it." (Tr. Vol. III at 522.) Also on cross-examination, T.RL. was asked about arguments and fighting between appellant and T.RL. (Tr. Vol. II at 473.) While T.RL. conceded that she may have hit the girls one or two times for discipline she contended that

she provided the girls a safe and loving home. (Mar. 3-5, 2020 Tr. Vol. IV at 712.) By eliciting the other-acts testimony from the girls, trial counsel appears to have tried to discredit their testimony, and by implication L.A.'s allegations of abuse. Appellant's counsel also appeared to use other-acts testimony to argue that T.RL. and appellant provided a loving home and that the abuse allegations were based on the girl's efforts to reconcile with the mother. G.B. stated that she made a claim of abuse, but it was later disproven. (Tr. at Vol. II 277-78.) Appellant's counsel later called the principal as to allegations of abuse by appellant. Bailey stated that appellant and T.RL. attended parent-teacher conferences, and he did not observe any signs of physical abuse or neglect in S.A. or T.RN. at school. It is also reasonable that appellant's counsel, given the nature of the allegations, did not want to highlight the testimony by objecting to these allegations given his later use of the testimony. *Hartman* at ¶ 67 ("Depending on the nature of the other-acts evidence and the context in which it is used, defense counsel may as a matter of strategy wish to avoid highlighting the evidence for the jury.").

{¶ 47} The most problematic aspects of the identified testimony are the specific instances of physical violence by appellant against the girls. While not overly relevant to the allegations at issue, they likely fall under impermissible other-acts testimony. However, we cannot find that these statements constituted plain error as the error was not necessarily obvious given the need to establish the environment of the abuse. The girls testified that the appellant was more aggressive towards S.A. and T.RN. than L.A. indicating that the sexual abuse was a sort of reward and prevented L.A. from that type of physical violence. Also, as set forth in the preceding paragraph, opposing counsel used many of these specific acts as part of his strategy to discredit various witnesses' testimony making it less obvious in the record whether the error was apparent to the trial court without objection. Moreover, appellant's substantial rights were not affected as we are not convinced that the outcome of the trial was affected as there remains ample evidence of appellant's guilt based on the testimony of L.A.

{¶ 48} Appellant's first assignment of error is overruled.

**B. Appellant's Second Assignment of Error**

{¶ 49} In appellant's second assignment of error, he argues that the trial court erred in admitting the state's exhibit 2A, a video recording of L.A.'s interview with Wilkinson.

Specifically, appellant argues that the statements in the video constitute impermissible hearsay evidence and do not qualify under medical diagnosis or treatment hearsay exceptions. Appellant also argues that even if parts of the video did qualify under the medical diagnosis exception, the remaining aspects the video were needlessly cumulative and prejudicial under Evid.R. 403.

{¶ 50} Generally, this court will affirm the trial court's admission or exclusion of evidence absent a finding of an abuse of discretion and that the defendant was materially prejudiced. *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 41, quoting *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 16. An error in the admission of evidence is grounds for reversal only in cases where the appellant's substantial rights were affected, or substantial justice appears to not have been done. *Jarvis v. Hasan*, 10th Dist. No. 14AP-578, 2015-Ohio-1779, ¶ 70, citing *Faieta v. World Harvest Church*, 10th Dist. No. 08AP-527, 2008-Ohio-6959, ¶ 73. "To show an evidentiary ruling has affected a substantial right, the party must demonstrate that the alleged error impacted the final determination of the case." *Jarvis* at ¶ 70, citing *Lips v. Univ. of Cincinnati College of Medicine*, 10th Dist. No. 12AP-374, 2013-Ohio-1205, ¶ 49, citing *Campbell v. Johnson*, 87 Ohio App.3d 543, 551 (2d Dist.1993).

{¶ 51} As an initial matter, trial counsel for appellant failed to object to the playing of the video. Once the video was played for the jury, counsel objected, arguing that he was not able to cross-examine the victim on her statements in the video. Accordingly, we will review the admission of the video based on appellant's ability to cross-examine L.A. under an abuse of discretion and all remaining arguments will be reviewed under a plain error analysis. S*tate v. McKinney*, 10th Dist. No. 13AP-211, 2013-Ohio-5394, ¶ 20, citing Crim.R. 52(B) (finding appellant did not object at the trial level on particular grounds presented on appeal forfeiting all but plain-error review).

{¶ 52} Regarding appellant's argument that he was not able to cross-examine the witness, as also set forth in our analysis of appellant's first assignment of error, we agree with the trial court that the video was available to appellant prior to trial, and it could have been used in cross-examination. We also note that L.A. testified at trial and was subject to cross-examination, and as such, the Confrontation Clause does not preclude use of her earlier statements. *State v. Land*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 113, quoting

*Crawford v. Washington*, 541 U.S. 36 (2004), fn. 9  ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. * * * The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.").  Because appellant was present and available at trial to explain her statements in the video, the Confrontation Clause is not implicated.[4]  As such, the trial court did not abuse its discretion in admitting the video on that basis.

{¶ 53}  Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."   Evid.R. 803 provides certain exceptions to the hearsay rule, regardless of whether the declarant is available as a witness.  Evid.R. 803(4) states that an out-of-court statement is not excluded hearsay testimony if it is "made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."  It is well-established law that statements made by a child to identify an individual for sexual abuse is relevant to diagnosis and treatment of a child.  *State v. Dever*, 64 Ohio St.3d 401, 413 (1992).  These statements provide a treating physician information as to any potential injuries the child may have, preventing future abuse, and identify any potential emotional abuse of the child.  *Id.* at 413.

{¶ 54}  This court considered a similar issue in *C.C.B.* finding the trial court did not err in allowing the video recording of the Nationwide Children's Hospital forensic interview into evidence.  We wrote:

> [T]he Supreme Court has "classified information regarding the identity of the perpetrator, the type of abuse alleged, the identification of the areas where the child had been touched and the body parts of the perpetrator that had touched her, as well as the time frame of the abuse, as statements for diagnosis and treatment because that information allowed the doctor or nurse to determine whether to test the child for sexually

---

[4]We also note that, for the reasons set forth in our analysis of appellant's second assignment of error infra, the statements made by L.A. do not offend the Confrontation Clause as the interview was used for medical diagnosis and treatment. "Statements made to interviewers at child-advocacy centers that are made for medical diagnosis and treatment are nontestimonial and are admissible without offending the Confrontation Clause." *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, paragraph two of the syllabus.

> transmitted diseases, and to identify any trauma or injury sustained during the alleged abuse."

*State v. C.C.B.*, 10th Dist. No. 18AP-782, 2019-Ohio-3631, ¶ 36, quoting *In re C.S.*, 10th Dist. No. 11AP-667, 2012-Ohio-2988, ¶ 14, citing *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, ¶ 32.

{¶ 55} In the present case, Wilkinson, a forensic interviewer and licensed social worker at Nationwide Children's Hospital, interviewed L.A. as to allegations of sexual abuse. L.A. described the nature of the abuse by appellant, identified the areas where she was touched and penetrated as well as areas of appellant's body that touched her. L.A. discussed the timeline for the abuse as well as the circumstances that would lead to appellant coming down to the basement to initiate the abuse. These statements help to direct the medical examination and treatment of L.A. going forward. As such, the video of the forensic interview falls squarely under the medical diagnosis and treatment exception under Evid.R. 803(4). Even if small portions of the video do not fall under medical diagnosis and treatment exception, the error is harmless as L.A. was available and testified at trial as to the sexual abuse allegations. " '[T]he admission of hearsay is harmless error where the declarant was also a witness and examined regarding matters identical to those contained in the hearsay statements.' " *State v. F.R.,* 10th Dist. No. 14AP-440, 2015-Ohio-1914, ¶ 37, quoting *State v. Smith*, 2d Dist. No. 20828, 2006-Ohio-45, ¶ 16, citing *State v. Allen*, 2d Dist. No. 1390 (May 24, 1996); *State v. Loch*, 10th Dist. No. 02AP-1065, 2003-Ohio-4701, ¶ 16, citing *State v. Tomlinson*, 33 Ohio App.3d 278, 281 (12th Dist.1986) (finding the admission of hearsay was harmless when the declarant is cross-examined on the same subject matters and the erroneous evidence is cumulative in nature).

{¶ 56} Appellant next contends that, because the examination identified no physical injuries, the video does not implicate the medical diagnosis exception. This argument is unpersuasive as Wilkinson had no previous knowledge as to what, if any, injuries L.A. sustained prior to the interview. Appellant also argues that L.A.'s statements do not meet the medical exception because Wilkinson is not a physician. This argument is also without merit as the exception is extended to social workers as long as the purpose of the statement is part of the initiation of medical diagnosis or treatment. *C.C.B.* at ¶ 35, citing *State v. Jordan*, 10th Dist. No. 06AP-96, 2006-Ohio-6224, ¶ 20.

{¶ 57} Appellant argues that even if parts of the interview fall under Evid.R. 803(4), the video was needlessly cumulative and prejudicial. After careful review of the video, we find that the trial court did not commit plain error in admission of the video on these grounds. The trial court has broad discretion in allowing evidence and addressing any redundancy in the context of a minor testifying of sexual abuse. *C.C.B.* at ¶ 27, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001) ("trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court")(Citation omitted.); *Jordan* at ¶ 9 (finding no abuse of discretion in admitting testimony over hearsay objection as social worker's "description of [child victim's] comments during the interview paralleled [the victim's] subsequent testimony at trial"); *State v. Sheldon*, 12th Dist. No. CA2013-12-018, 2014-Ohio-5488, ¶ 35 (concluding that in the child sex abuse context "cumulative evidence is not necessarily inadmissible"). (Citations omitted.)

{¶ 58} In the case sub judice, the vast majority of the video falls under the medical diagnosis or treatment hearsay exception. Other aspects of the video, as discussed more extensively in the first assignment of error, constitute permissible testimony as to background, motive, and grooming of the victim. Error in the admission of testimony could be considered harmless where the testimony is cumulative of other admitted testimony. *Arnold* at ¶ 8, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 59 (concluding that any error in admitting statements were harmless as the testimony was cumulative of other properly admitted testimony); *State v. Holloman*, 10th Dist. No. 06AP-01, 2007-Ohio-840, ¶ 3. "An error in the admission of evidence is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State v. Simpson*, 10th Dist. No. 01AP-757, 2002-Ohio-3717, ¶ 38, citing *Williams*, 6 Ohio St.3d at 290. Again, we note that the state took efforts to remove potentially prejudicial aspects of the video by redacting portions of the interview. Accordingly, even if parts the video were duplicative, the evidence was properly admitted and any minor statements that do not fall under the exception cannot overcome plain error analysis as there is overwhelming evidence to support the guilty verdict.

{¶ 59} Appellant's second assignment of error is overruled.

**C. Appellant's Third Assignment of Error**

{¶ 60} In appellant's third assignment of error, he argues that the trial court erred in failing to allow impeachment evidence of the victim as to alleged prior false accusations of sexual misconduct.

{¶ 61} The Supreme Court has found that Ohio's rape shield statute, R.C. 2907.02(D), does not apply when a prior allegation can be proven by the defense to be totally false or unfounded and the evidence may be admitted under Evid.R. 608(B). *State v. Boggs*, 63 Ohio St.3d 418 (1992) ("R.C. 2907.02 prohibits only evidence of 'sexual activity' of the victim. Because prior false accusations of rape do not constitute 'sexual activity' of the victim, the rape shield law does not exclude such evidence."). The *Boggs* court stated that the trial court has the discretion in allowing cross-examination if it is "clearly probative of truthfulness or untruthfulness." *Id.* at 421. If the individual answers in the affirmative and an in-camera hearing is conducted, the trial court still has discretion to determine if the defense counsel may proceed. "Under no circumstances would the defense be permitted to introduce extrinsic evidence." *Id.* at 422, citing Evid.R. 608(B). This court reviews a trial court's ruling on the admissibility of evidence for an abuse of discretion. *State v. Myers*, 10th Dist. No. 02AP-1187, 2003-Ohio-4135, ¶ 64.

{¶ 62} Appellant argues that "by implication" L.A.'s prior visits to the Child Advocacy Center ("CAC") were for suspected maltreatment. (Appellant's Brief at 26.) Counsel for appellant, however, did not proffer testimony that the prior allegations of sexual abuse were totally unfounded. The burden is on the defense to demonstrate that the prior alleged accusations were "totally false and unfounded." *Boggs* at 423. Appellant asked L.A. whether she had been abused in the past. Before L.A. could answer, the state objected to the question, which was sustained by the trial court. (Tr. Vol. II at 422.) Accordingly, there is insufficient evidence for the argument that L.A. made false allegations of sexual abuse in the record.

{¶ 63} Evid.R. 608(B) states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609 may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative

of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness * * *.

{¶ 64} Appellant essentially argues on appeal that the trial court erred in precluding him from searching for evidence of false accusations of rape through in-camera questioning of L.A. R.C. 2907.02 does not require a court to compel such an inquiry. "[U]nder Evid.R. 608(B), a party generally cannot prove by extrinsic evidence specific instances of the conduct of a witness for the purpose of attacking the witness's character for truthfulness. Although Evid.R. 608(B) did not impede the court's ability to hear extrinsic evidence at an in-camera hearing, it also did not compel the court to make the victim and parents testify during such a hearing." *McKinney* at ¶ 20. While appellant contends it could have impeached L.A. with evidence related to purported false allegations, that argument is far from certain.

{¶ 65} As to *Boggs*, the Supreme Court addressed the issue as to "whether the rape shield provisions of R.C. 2907.02(D) prohibit a defendant from cross-examining an alleged rape victim about prior false rape accusations she is alleged to have made." *Id.* at 420. The *Boggs* court held, Evid.R. 608(B) allows, in the trial court's discretion, cross-examination on specific instances of conduct "if clearly probative of truthfulness or untruthfulness." *Id.* at paragraph one of the syllabus. Only in cases "where an alleged rape victim *admits* on cross-examination that she has made a prior false rape accusation, the trial judge shall conduct an in-camera hearing to ascertain whether sexual activity was involved and, as a result, cross-examination on the accusation would be prohibited by R.C. 2907.02(D), or whether the accusation was totally unfounded and therefore could be inquired into pursuant to Evid.R. 608(B)." (Emphasis added.) *Id.* at paragraph two of the syllabus.

{¶ 66} Here, L.A. did not answer the question as to whether she had made similar accusations in the past, and trial counsel did not provide an adequate evidentiary basis during its discussion with the trial court to support his claim. This court does not find *Boggs* to require trial courts to permit in-camera questioning of the victim as to alleged false accusations of sexual activity without evidence the victim even made such an accusation. *See McKinney* at ¶ 37 ("The purpose of a *Boggs* hearing is for the trial court to determine the extent of cross-examination, not for a defendant to gather impeachment

evidence in the first instance."); *State v. Delozier*, 10th Dist. No. 94APA02-250 (Nov. 17, 1994) (concluding the trial court did not err under *Boggs* in prohibiting testimony about victim's alleged false allegation of sexual abuse where defendant's trial counsel did not present evidence to indicate it had anything to substantiate the existence of the allegation other than hearsay evidence). As such, the trial court did not abuse its discretion in precluding appellant from asking L.A. as to purported claims of prior false allegations as appellant failed to demonstrate an adequate basis for the argument.

{¶ 67} Appellant's third assignment of error is overruled.

### D. Appellant's Fourth Assignment of Error

{¶ 68} In appellant's fourth assignment of error, he argues that the trial court erred in allowing Dr. Letson to present opinion testimony that showed the victim was telling the truth about the sexual abuse. Specifically, appellant argues Dr. Letson's testimony constituted improper vouching for L.A.'s claims of sexual abuse by appellant. As counsel for appellant failed to object to the testimony, we review this assignment of error under a plain error analysis. *Long* at 97; Crim.R. 52(B).

{¶ 69} After careful review of the testimony at issue, we are not persuaded that Dr. Letson provided a personal opinion as to the truthfulness of L.A.'s accusations. Dr. Letson testified as to the forensic interview procedure and to L.A.'s examination. Dr. Letson concluded that there were no physical findings from the examination. Dr. Letson explained that this was normal as 90 to 96 percent of cases involving sexual abuse have no physical findings. Dr. Letson acknowledged that she could not confirm the sexual abuse based on the physical examination alone. Dr. Letson is qualified to testify as to the physical examination and her statement that the examination was consistent with L.A.'s testimony does not indicate a finding of credibility but that the testimony is not, in and of itself, inconsistent. Appellant seems to acknowledge as much later in his brief writing, "Dr. Letson examined L.A. and could not substantiate or confirm any of L.A.'s allegations." (Appellant's Brief at 58.)

{¶ 70} Appellant relies on *State v. Boston*, 46 Ohio St.3d 108 (1989), to support his argument. A brief review of the case is instructive. In *Boston*, the defendant was alleged to have molested his 2-year-old daughter. The victim in the case, although deemed able to tell the truth and communicate, refused to testify. The child's physician testified at trial that

the child had not fantasized her abuse in effect stating that the victim's statements were truthful. *Id.* at 128. The Supreme Court found that the trial court committed reversible error in allowing the expert's testimony as to the veracity of the child's statements.

{¶ 71} We find *Boston* is distinct from the instant case. First, unlike in *Boston*, L.A. testified at trial. "*Boston* does not apply when the child victim actually testifies and is subjected to cross-examination." (Internal quotations omitted.) *State v. Roush*, 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 61, quoting *State v. Benjamin*, 8th Dist. No. 87364, 2006-Ohio-5330, ¶ 19, quoting *State v. Curren*, 5th Dist. No. 04 CA 8, 2005-Ohio-4315, ¶ 26. When a minor victim testifies at trial, the jury may make their own determination of credibility of the victim compared to the minor in *Boston* where there was no independent reliability to save the testimony from the expert witness that improperly vouched for the child. *Id.* at ¶ 16. As such, even if we were to find that Dr. Letson's testimony amounted to improper bolstering, any error in admitting expert testimony regarding the veracity of L.A.'s testimony is harmless as the jury could perceive L.A. and decide for themselves the credibility of her testimony. *Hughes* at ¶ 49. Given trial counsel failed to object at trial, we cannot find plain error in this instance.

{¶ 72} Appellant's fourth assignment of error is overruled.

**E. Appellant's Fifth Assignment of Error**

{¶ 73} In appellant's fifth assignment of error, he alleges that the trial court abused its discretion instructing the jury that T.RL. "was provided information about witnesses and evidence that has already been presented in this courtroom" and the jury "may use this information to test the credibility or believability of this witness' testimony." (Tr. Vol. III at 634-37; 643-44.)

{¶ 74} The trial court has broad discretion to separate witnesses under Evid.R. 615. As set forth in Evid.R. 615(A), "at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." The purpose of the Evid.R. 615 order is to ensure a witness' testimony is based on his/her personal knowledge instead of what he or she may hear from another witness. *State v. Waddy*, 10th Dist. 87AP-1159 (Nov. 2, 1989). "The spirit of the separation order is violated if counsel or a spectator briefs a witness upon other witnesses' testimony." *Id.*, citing *State v. Snowden*, 7 Ohio App.3d 358 (10th Dist.1982). The trial

court's ruling concerning the separation of witnesses and sanctions for failure to comply with a separation order are reviewed under an abuse of discretion analysis. *State v. Williams*, 10th Dist. No. 16AP-350, 2018-Ohio-974, ¶ 29, quoting *State v. Smith*, 49 Ohio St.3d 137, 142 (1990).

{¶ 75} In the present case, the trial court ordered the separation of witnesses as follows:

> If there's anyone that's going to testify in this matter they are to remain outside until such time as they are to testify. They are not to discuss their testimony with anyone until this case is over.
>
> I'm going to ask counsel to notify all your witnesses that there is a separation order in place; that they are to remain outside; and that they are not to discuss their testimony with anyone.

(Tr. Vol. I at 221.)

{¶ 76} During the trial, the state argued that appellant violated this order by speaking to several individuals, including T.RL., disclosing the testimony of witnesses from the trial. The state played portions of calls between appellant and the witnesses to support its position that the order had been violated. The state requested that the witnesses be excluded from testifying or, alternatively, the jury be instructed that appellant violated the court's order to not discuss testimony with anyone until the case is over. Appellant posited that the calls were attempts to arrange witnesses to come to testify at trial and objected to the exclusion of any witnesses as it would prejudice appellant's ability to present its case. The trial court concluded that appellant violated the separation order but allowed T.RL. to testify with an instruction that she "was provided information about witnesses and evidence that has already been presented in this courtroom" and that the jury "may use this information to test the credibility or believability of this witness' testimony." (Tr. Vol. III at 634-37, 643-44.)

{¶ 77} After careful review of the record, we find the trial court's use of the instruction was not an abuse of discretion. At the start of trial, the court imposed a separation order that all potential witnesses are not to discuss their testimony with anyone. While a defendant is permitted to speak to witnesses generally and assist with arrangements for them to appear at trial, the trial court concluded that appellant's

statements to T.RL., and other potential witnesses, exceeded that limitation. The trial court stated "clearly [appellant] thought that getting a timeline to [T.RL.] was something that would be significant and so making efforts, based upon the recordings to do that, get that information to her. So the Court * * * does find a clear violation of its previous order of separation of witnesses in this matter." (Tr. Vol. III at 635.) T.RL. later acknowledged as much, stating that she discussed with appellant the prior testimony of witnesses from the trial. (Tr. Vol. III at 714.) As noted by the trial court, once it finds a violation of the order of separation, it may exclude the witness from testifying. Instead, the trial court elected to provide an instruction prior to T.RL.'s testimony. The instruction was a straightforward assessment of the facts and was a reasonable remedy given the nature of the telephone calls. The trial court, despite appellant's efforts to relay information to T.RL. during the telephone calls, was cognizant of the potential prejudice to appellant of excluding witnesses altogether and even elected to not indicate in the instruction whether it was appellant or the state that committed the Evid.R. 615 violation. The instruction merely stated that a violation occurred.

{¶ 78} Appellant's reliance on *State v. Murphy*, 7th Dist. No. 19 MA 0018, 2019-Ohio-5462, is misplaced. In *Murphy*, the prosecutor communicated with a witness during a lunch break between her cross and redirect examination. The trial court declared a mistrial but denied the defendant's motion to dismiss. The Seventh District Court of Appeals affirmed the trial court's denial of the motion to dismiss on double jeopardy grounds and concluded that there was no prosecutorial misconduct intentionally calculated to cause a mistrial. The trial court found that the record indicated the prosecutor's conduct was not nefarious or intended, which defense counsel agreed. *Murphy* at ¶ 21. In addition to the obvious distinctions between the role of a prosecutor and the appellant in the case, *Murphy* is distinct as the discussion was during a break not prior to the start of her testimony. The trial court in *Murphy* had also not expressly forbid communication between anyone during the break in the victim's testimony or restrict the prosecutor's access to the victim prior to redirect examination. *Murphy* at ¶ 20. Here, the trial court concluded that appellant was aware of the separation order, and appellant knew he was precluded from discussing trial testimony with potential witnesses in the case. Given the factual distinctions between the cases, we find *Murphy* inapplicable.

{¶ 79} Even if there was an error in providing the instruction there was no prejudice as T.RL.'s testimony was largely contextual and did not refute L.A.'s allegations of sexual abuse. T.RL. testified that she rarely entered the basement, confirmed appellant's scar on his naval, and that L.A. never previously informed her of any of the allegations against appellant. While the trial court referenced the jail calls at sentencing, our review of the record indicates that this statement was in reference to appellant's actions that led to the Evid.R. 615 violation instead of what appellant alleges as a factor the jury considered in reaching its verdict. The trial court appeared to indicate the jail calls demonstrate appellant was trying to manipulate witnesses to help his defense, not a consideration by the jury in reaching the verdict. As the jury never heard the jail calls there is no way for them to have considered them in their deliberations.

{¶ 80} Accordingly, we overrule appellant's fifth assignment of error.

**F. Appellant's Sixth Assignment of Error**

{¶ 81} In appellant's sixth assignment of error, he contends that the trial court erred in excluding subpoenaed case records regarding G.B. and her children from Franklin County Children Services and the National Youth Advocate Program.

{¶ 82} Pursuant to R.C. 5153.17, children services agency records are confidential. However, these records may be available in discovery if the trial court, after an in-camera inspection, determines: the records are relevant and necessary to the case, whether there is good cause shown by the moving party, and whether the admission outweighs confidentiality concerns identified in R.C. 5153.17 and 2151.421(H)(1). *Child Care Provider Certification Dept. v. Harris*, 8th Dist. No. 82966, 2003-Ohio-6500, ¶ 11, citing *Johnson v. Johnson*, 134 Ohio App.3d 579, 585 (3d Dist.1999).

{¶ 83} The trial court's ruling on a pretrial motion to quash a subpoena is generally reviewed under an abuse of discretion. *Ohio Elections Comm. v. Ohio Chamber of Commerce*, 158 Ohio App.3d 557, 2004-Ohio-5253, ¶ 18 (10th Dist.), citing *Petro v. N. Coast Villas Ltd.*, 136 Ohio App.3d 93, 96 (9th Dist.2000). Here, the trial court conducted an in-camera inspection and determined that none of the information could be used at trial. The trial court addressed the issue before trial, stating:

> I indicated to NYAP [National Youth Advocate Program] and I
> indicated to the attorney representing NYAP and the attorney
> representing Children Services to turn the information over to

me. And then what happens is that I do an inspection of the documents and the records to find out if there's any information in those records that are relevant to the issues in this trial.

After reviewing a ton of documents, I indicated to the attorneys that the information that's within the file is not any information that could be used at trial.

Mr. Billing has asked me on a number of occasions about using certain information which I've already indicated to him would be inappropriate in this case.

You know, things like a child's -- what the child is going through based upon the fact that the child is in foster care, okay, that's irrelevant to the issues in this case. You can't say because the child's gone through foster care that I can now testify -- or excuse me, I can now cross-examine her on all of the treatment that she's received, all the counseling that she's received, all the programs that she's been engaged in, what's been going on with her in school. No. It's my responsibility to make sure that only relevant information is produced at trial.

(Tr. Vol. I at 13-14.)

{¶ 84} While appellant preserved the issue for appellate review, he failed to request that the records be placed under seal. As such, we are unable to review the records on appeal. Pursuant to App.R. 12(A)(1)(b), this court is limited to determining an appeal based on the record as provided in App.R. 9. As stated in *State v. Smith*, 10th Dist. No. 16AP-772, 2017-Ohio-7740, ¶ 25, citing *State v. Newman*, 6th Dist. No. E-11-065, 2013-Ohio-414, ¶ 7-8, *appeal not accepted*, 135 Ohio St.3d 1471, 2013-Ohio-2512:

Although it is the duty of all of the participants during trial to ensure that a proper appellate record is being created, Crim.R. 22 and *State v. Lewis*, 2d Dist. No. 23850, 2011-Ohio-1411, ¶ 28, ultimately appellant bears the duty to demonstrate where error occurs on the record. App.R. 9(B) and *State v. Perry*, 101 Ohio St.3d 118, 2004 Ohio 297, 802 N.E.2d 643, ¶ 6, quoting *State v. Fisher*, 99 Ohio St.3d 127, 2003 Ohio 2761, 789 N.E.2d 222, ¶ 7. Without a complete record, the appellate court must presume the regularity of the proceedings and the validity of the judgment. *State ex rel. Hoag v. Lucas Cty. Bd. of Elections*, 125 Ohio St.3d 49, 2010-Ohio-1629, 925 N.E.2d 984, ¶ 12, and *State v. Prince*, 71 Ohio App.3d 694, 698, 595 N.E.2d

> 376 (4th Dist.1991), citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).
>
> If an appealable issue arises during trial, appellant has a duty to proffer contrary evidence in order for the appellate court to have a record to review the issue. Evid.R. 103(A)(2) and *State v. Chapin*, 67 Ohio St.2d 437, 444, 424 N.E.2d 317 (1981). Correspondingly, appellant has a duty to ensure that all of the evidence considered by the court is entered into the record and transmitted to the court of appeals or to take action to correct or supplement the record pursuant to App.R. 9 if there is an error or omission. *State v. Tyler*, 50 Ohio St.3d 24, 41, 553 N.E.2d 576 (1990), *superseded by constitutional amendment in part on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 103, 1997-Ohio-355, 684 N.E.2d 668 (1997), fn. 4 and *Maseck v. Lindav Properties*, 1st Dist. No. C-050528, 2006-Ohio-3721, ¶ 11. Otherwise, the appellate court must find that appellant waived any error that might have been reflected in the omitted record. *Smith* at 41. *Compare In re Holmes*, 104 Ohio St.3d 664, 2004-Ohio-7109, 821 N.E.2d 568, ¶ 19-20 (appellant does not waive any error if the omission in the record is due to the error of the court personnel and not appellant).

**{¶ 85}** In the case sub judice, although the record contains some discussion as to the substance of the subpoenaed case records regarding G.B. and her children from Franklin County Children Services and the National Youth Advocate Program, the records were not placed under seal and are not available in the record. Accordingly, we cannot say that appellant has met his burden of demonstrating error on appeal as to the trial court's decision to quash the subpoenaed records. App.R. 16(A)(1) through (7). From what we can surmise in the record, however, based on the available information, the trial court's determination to preclude the use of the records at trial was not an abuse of discretion. The trial court's statement that the records of "what the child is going through based upon the fact that the child is in foster care, okay, that's irrelevant to the issues in this case. You can't say because the child's gone through foster care that I can now testify -- or excuse me, I can now cross-examine her on all of the treatment that she's received, all the counseling that she's received, all the programs that she's been engaged in, what's been going on with her in school. No. It's my responsibility to make sure that only relevant information is produced at trial." (Tr. Vol. I at 14.) The trial court's assessment of its role when conducting in-

camera inspections of such sensitive records is accurate and, based on the limited information available in the record, not an unreasonable basis to exclude the subpoenaed records.

{¶ 86} Appellant's sixth assignment of error is overruled.

**G. Appellant's Seventh Assignment of Error**

{¶ 87} In appellant's seventh assignment of error, he argues that the trial court erred in failing to inquire into appellant's request to represent himself at trial.

{¶ 88} The Sixth Amendment to the United States Constitution protects a criminal defendant's right to self-representation reading: "In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence."  The Ohio Constitution, Article I, Section 10, similarly provides that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." The right to counsel " 'implicitly embodies a "correlative right to dispense with a lawyer's help." ' "  *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, ¶ 26, quoting *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 23, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942). This right to counsel is frustrated when counsel is compelled upon a defendant that is not willing to accept the attorney to advocate on his behalf in the proceeding.

{¶ 89} The United States Supreme Court wrote:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor." Although not stated in the Amendment in so many words, the right to self-representation -- to make one's own defense personally -- is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Faretta v. California*, 422 U.S. 806, 819-20 (1975).

{¶ 90} Subsequent to *Faretta*, the Supreme Court of Ohio found the "[t]he Sixth Amendment, as made applicable to the state by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-

representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus, citing *Faretta*. When a criminal defendant unambiguously asserts his right to self-representation it is the trial court's duty to conduct a *Faretta* inquiry to determine if the defendant is knowingly and intelligently waiving his or her right to counsel. *Obermiller* at ¶ 30, citing *United States v. Cromer*, 389 F.3d 662, 682-83 (6th Cir.2004). The Supreme Court of Ohio also concluded that a trial court's denial of the right to self-representation, when the right is "properly invoked," constitutes reversible error. *State v. Reed*, 74 Ohio St.3d 534, 535 (1996), citing *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984), fn. 8. *See State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, ¶ 74 (finding it was an abuse of discretion for the trial court to refuse defendant the right to proceed pro se in a capital case if the defendant properly invokes the right to self-representation).

{¶ 91} Whether a defendant "properly invokes" the right to self-representation is critical to determine if the trial court committed reversible error by refusing defendant the right to proceed pro se. A defendant must "unequivocally and explicitly invoke" his intention to assert his right to self-representation. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 38. This ensures that a criminal defendant does not " 'tak[e] advantage of and manipulat[e] the mutual exclusivity of the rights to counsel and self-representation.' " *Obermiller* at ¶ 29, quoting *United States v. Frazier-El*, 204 F.3d 553, 559 (4th Cir.2000). Accordingly, courts must " 'indulge in every reasonable presumption against waiver' " of the right to counsel. *Obermiller* at ¶ 29, quoting *Brewer v. Williams*, 430 U.S. 387, 404 (1977). Regardless, if a criminal defendant has unequivocally and expressly requested to proceed pro se, a defendant can later waive that request by acquiescing to representation by counsel. *Obermiller* at ¶ 31, citing *Cassano* at ¶ 42, citing *McKaskle* at 182.

{¶ 92} We note that when this case began, appellant was initially represented by a different attorney and indicated in a letter to the trial court that he wished to retain new counsel as it appeared that trial counsel was just trying to "plead him out." (June 20, 2018 Bond Hearing Tr. at 3.) Appellant later retained new trial counsel and the case was continued. On October 24, 2019, appellant sent the court another letter, writing that he

was concerned the investigator was not locating all his potential witnesses. Prior to trial, appellant complained to the trial court that counsel failed to meet with him as often as he would like and stated, "I'm willing to do my case pro se or try to get pro bono to get my case heard the correct way to where everybody's informed, such as myself and my family, and not left in the dark about things until a couple hours before a court date." (Tr. Vol. I at 9.) The trial court then advised appellant not to proceed pro se as these were serious offenses and explained its expectations as to comporting with rules of evidence and criminal procedure. The trial court noted that appellant had also previously sought new counsel before trial. (Tr. Vol. I at 10.) The trial court concluded that given the age and seriousness of the case it was time to proceed to trial as it was becoming a disservice to the victim in the case. Prior to swearing in the jury, the trial court again asked appellant and counsel, after additional time to meet with each other, whether they intended to move forward with the trial. Trial counsel indicated that they were ready to proceed with the case. (Tr. Vol. II at 124.)

{¶ 93} After careful review of the record, we find that appellant did not properly invoke, or even request, to represent himself at trial. Appellant's comments before the court amount to general complaints of his attorney but do not constitute an unequivocal and express invocation to represent himself in the case. While appellant relies on *Faretta*, the instant case is distinct as appellant did not make the requisite request to proceed pro se but only appeared to generally critique trial counsel's purported deficiencies in his representation. At no point was counsel forced upon appellant. Arguendo, even if comments to the trial court constituted an unequivocal and express request to proceed pro se, appellant waived that request by acquiescing to representation by counsel. *Obermiller* at ¶ 31, citing *Cassano* at ¶ 42, citing *McKaskle* at 182.

{¶ 94} Because appellant never properly invoked his desire to proceed pro se, the trial court did not need to engage in a *Faretta* inquiry to determine if the appellant knowingly and intelligently waived his right to counsel. The trial court in this instance addressed the identified critiques of appellant's counsel's representation allowing them to confer as to the case and the state's outstanding plea offer before the trial commenced. As the right to self-representation was not properly invoked, appellant was not denied the right to self-representation.

{¶ 95} Appellant's seventh assignment of error is overruled.

**H. Appellant's Eighth Assignment of Error**

{¶ 96} In appellant's eighth assignment of error, he alleges that trial counsel was ineffective in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution.

{¶ 97} In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part test to consider ineffective assistance of counsel. The Supreme Court of Ohio has adopted the *Strickland* test to resolve whether counsel's representation was ineffective. *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989) (writing the standard under the Ohio Constitution is "essentially the same as the one enunciated by the United States Supreme Court in *Strickland*").

{¶ 98} First, the defendant must demonstrate that trial counsel's representation was outside the range of professionally competent assistance and, accordingly, deficient. *Strickland* at 687. In determining claims of deficient representation, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). Second, the defendant must demonstrate that trial counsel's deficient representation resulted in prejudice to the defense and deprived the defendant of a fair trial. *Strickland* at 687. To establish prejudice, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When the allegations of ineffective assistance are based on trial counsel's failure to file a motion, the appellant must show that "(1) the motion was meritorious or likely to be granted, and (2) that there was a reasonable probability that the verdict would have been different had the motion been made." *Armengau* at ¶ 100, citing *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 63, citing *State v. Santana*, 90 Ohio St.3d 513 (2001), and *State v. Lott*, 51 Ohio St.3d 160 (1990).

{¶ 99} Appellant contends that trial counsel was deficient in the following ways: (1) counsel failed to object to other-acts evidence; (2) failed to object to the hospital interview

before it was played for the jury; (3) failed to file a pretrial motion to address L.A.'s alleged prior false accusations; (4) expressed sympathy and failure to object to evidence of sympathy to L.A. and her family; (5) failed to object or move to strike hearsay statements; (6) failure to object to improper vouching of L.A.; (7) failure to object to references to the word "victim" and erred by using the word "victim"; (8) failure to ensure that trial court sealed the subpoenaed confidential records; and (9) cumulative error. We will address each allegation in turn.

{¶ 100} Appellant first argues counsel was ineffective in failing to object to other-acts evidence. As set forth in the first assignment of error, we concluded that much of the evidence would have been permissible regardless of whether counsel had objected at trial. Moreover, trial counsel utilized other-acts evidence as part of his trial strategy in undermining the credibility of the sisters. However, the allowance of specific instances of violence by appellant into the record would qualify under the first prong of *Strickland* as outside the range of professionally competent assistance and, accordingly, deficient. However, appellant cannot meet the second prong as there is not a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. As such, appellant fails to meet the second prong of *Strickland*.

{¶ 101} Next, appellant argues trial counsel was ineffective for failing to object to hearsay evidence from the hospital interview before the video was played for the jury. For the reasons set forth in our analysis of the second assignment of error, we find this argument also unpersuasive. Briefly, as appellant had an opportunity to cross-examine L.A. on the video, but failed to do so, there is no Confrontation Clause issue. The video was permissible as most of the interview fell under the medical diagnosis and treatment exception to the hearsay rule. As other evidence in the video was admissible outside the hearsay issue, any other potentially impermissible hearsay was harmless as appellant had an opportunity to cross-examine L.A. regarding the video and matters identical to that contained in the hearsay statements. *F.R.*, at ¶ 37, quoting *Smith*, 2006-Ohio-45, at ¶ 16, citing *Allen*. We also note that it is conceivable that the lack of objections to the video while it was played could have been considered part of trial counsel's strategy as continually objecting would bring additional attention to the video bolstering L.A.'s credibility. "Tactical or strategic trial decisions, even if ultimately unsuccessful, will not substantiate a

claim of ineffective assistance of counsel." *State v. Ryan*, 10th Dist. No. 08AP-481, 2009-Ohio-3235, ¶ 77, citing *In re M.E.V.*, 10th Dist. No. 08AP-1097, 2009-Ohio-2408, ¶ 34. As such, we are not convinced that the first prong of *Strickland* is met. Regardless, appellant fails to demonstrate that the second prong of *Strickland* is satisfied as, even excluding the video, L.A. provided persuasive testimony that was never refuted by appellant. Accordingly, appellant has not demonstrated that trial counsel's deficient representation resulted in prejudice to the defense and deprived the him of a fair trial.

{¶ 102} Next, appellant argues that trial counsel was ineffective for failing to file a pretrial motion to address L.A.'s alleged prior false accusations. There is insufficient evidence in the record to explain the basis for the alleged prior false accusations and appellant's counsel failed to proffer evidence that L.A. made prior false statements. "There must be sufficient basis *in the record* * * * upon which the court can *decide* that error." (Emphasis sic.) *Hungler v. Cincinnati*, 25 Ohio St.3d 338, 342 (1986). It is well-established law that an appeals court is limited to the record of the proceedings from trial. *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 13. " 'It is impossible for a reviewing court to determine on direct appeal whether ineffective assistance of counsel occurred where the allegations of ineffectiveness are based upon evidence outside of the record.' " *State v. Prophet*, 10th Dist. No. 14AP-875, 2015-Ohio-4997, ¶ 32, quoting *State v. Farwell*, 12th Dist. No. CA2001-03-041, 2002-Ohio-1912, citing *State v. Cooperrider,* 4 Ohio St.3d 226, 228 (1983). Because trial counsel's claim of prior false allegations is outside the record of proceedings before this court, it is impossible for this court to review appellant's allegations of ineffectiveness.

{¶ 103} Appellant argues that counsel was ineffective in expressing sympathy to L.A. and her family and failing to move to strike expressions of sympathy by the state. We disagree. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland* at 689. In determining ineffective assistance of counsel, a reviewing court must make every effort to avoid distorting effects of hindsight. *Strickland* at 689. Given the nature of the allegation and the age of L.A., cross-examination of a minor for sexual abuse can often be perceived by the jury as aggressive or harsh. Here, appellant commented that he was "glad" L.A. was able to reunite with her mother and that her life appeared to be

"looking up." (Tr. Vol. II at 449; Tr. Vol. III at 529.) It is conceivable, and likely, to think a jury would look favorably on his concern and statements of L.A. and her sisters reuniting with G.B. At the very least, it falls in the acceptable range of trial strategy. Appellant next contends statements made to G.B. on her sobriety were improper stating he congratulated her "for doing well now" and "glad your children are doing well." (Tr. Vol. II at 269.) Again, it is reasonable trial strategy to think counsel was trying to gain favor with the jury by demonstrating a friendly demeanor especially after cross-examining G.B. on her drug dependency issues, which led to her children being placed in foster care. As to not objecting to the prosecutor's statements, it is conceivable to think additional objections could bring more attention to the testimony.

{¶ 104} Appellant also argues counsel was ineffective in failing to object to E.P.'s characterization of the sisters as "survivors." After review of the transcript, we do not find this as deficient as the statement appears in reference to the multiple times the children were placed in foster care and removed from their mother. The jury was aware the sisters did not have a father in their lives and G.B. was in and out of jail. Further, objecting to E.P.'s characterization of the girls as honest would have likely drawn more attention to the statement than it would have deserved. The jury heard testimony that E.P. wanted to adopt the girls and has a strong relationship with them to this day. Any claim by appellant that it was improper bolstering of the sisters, and by extension L.A., is tenuous and certainly did not result in a reasonable probability that it would undermine confidence in the verdict.

{¶ 105} Next, appellant argues counsel was ineffective based on failing to object to hearsay statements in E.P.'s testimony as to the behavior of the girls and attitude toward appellant and T.RL. E.P. testified generally as to her observations and the girls lack of desire to visit with appellant. The statement by E.P. as to L.A. crying in the bathroom was objected to and sustained by the trial court. Appellant also identifies statements by G.B. conveyed to her from T.RN. However, these statements while hearsay, are far from meaningful evidence in the case in which there are kidnapping and multiple counts of rape. Moreover, all these individuals testified to the same evidence at trial. " '[T]he admission of hearsay is harmless error where the declarant was also a witness and examined regarding matters identical to those contained in the hearsay statements.' " *F.R.* at ¶ 37, quoting *Smith*, 2006-Ohio-45, ¶ 16, citing *Allen*. Even considering all these statements as

impermissible hearsay and deficient under the first prong of *Strickland*, they are fleeting remarks in the context of a protracted jury trial. As such, we do not find that there is a reasonable probability that this would undermine confidence in the outcome.

{¶ 106} Appellant also contends that trial counsel was ineffective for failing to object to improper vouching. This issue is extensively discussed in appellant's fourth assignment of error. As set forth previously, we are not persuaded that Dr. Letson provided her personal opinion on the truthfulness of L.A.'s claims of sexual abuse. Dr. Letson testified as to the interview procedure and to L.A.'s examination. Dr. Letson concluded that the examination was normal and there were no physical findings from the examination. Dr. Letson stated that this was typical as in 90 to 96 percent of sexual abuse cases there are no physical findings. Dr. Letson noted that she could not confirm the sexual abuse based on the physical examination alone. As such, we do not find appellant has met his burden under *Strickland*.

{¶ 107} Appellant next argues that counsel was ineffective in allowing the use of the word "victim" at trial. Specifically, appellant argues that counsel was ineffective for failing to object to the prosecutor's use of the word "victim" in voir dire, witnesses use of the word "victim" in reference to L.A., defense counsel's use of the word "victim" at trial, and jury instructions referring to L.A. as a "victim."

{¶ 108} After careful review of the record, the state and witnesses did not use the word "victim" at trial in place of L.A. or in an immediate reference to her as the victim in the case. The prosecutor referred to his unit as "special victim's unit." (Tr. Vol. I at 24, 49, 77-78, 108-09.) Next, E.P. made a general remark that she took L.A. to her examination stating that they went to the building at Nationwide Children's Hospital where "victims of assault" are processed. (Tr. Vol. II at 357.) Next, the state made a reference to a "victim advocate" present at the CAC interview. (Tr. Vol. III at 545.) Wilkinson also used the word "victim" but in reference to the fact that victims delaying their disclosures of abuse is not uncommon. Appellant's trial counsel made a general reference to law enforcement needing to question a victim. (Tr. Vol. III at 569.) In closing statements, the state made a general reference to "victims of sexual abuse" taking time to open upon and report abuse. (Tr. Vol. III at 739.) Finally, the use of the word "victim" in the jury instruction mirrors the statutory definitions of rape and kidnapping. *Compare* Tr. Vol. IV at 768 ("the defendant by force or

threat restrained L.A. of her liberty for the purposes of engaging in sexual activity with the victim against the victim's will") to R.C. 2905.01(A)(4) ("[n]o person, by force * * * shall * * * restrain the liberty of the [victim] * * * [t]o engage in sexual activity, as defined in [R.C. 2907.01], with the victim against the victim's will"; Tr. Vol. IV at 771 ("defendant engaged in sexual conduct with another and the defendant purposely compelled the other person to submit by force or threat of force. The State need not prove that the victim physically resisted") to R.C. 2907.02(C)("[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force. * * * A victim need not prove physical resistance to the offender in prosecutions under this section"). These references do not suggest a finding of appellant's guilt or undermine the fairness of the trial as they are either broad references, titles as in the case of the victim advocate, or an accurate reflection of the statutory language at issue in the case.

{¶ 109} Appellant relies on our decision in *State v. Almedom*, 10th Dist. No. 15AP-852, 2016-Ohio-1553, finding repeated references to the complaining witness as a "victim" constituted error telling the jury that the complaining witness was truthful when claiming that the sexual abuse occurred. This court addressed a similar argument in *State v. Nichols*, 10th Dist. No. 19AP-113, 2020-Ohio-4362, writing: "[f]irst and foremost, in *Almedom*, the offending references to the witnesses as 'victims' were made by the trial judge, not the prosecutor. While a trial judge must remain detached and neutral in any matter before the court, the prosecutor is not constrained by any such obligation of neutrality." *Id.* at ¶ 39, citing *State v. Harper*, 10th Dist. No. 01AP-201 (Dec. 31, 2001). It is also conceivable that defense counsel did not want to bring further attention to the issue as part of the trial strategy by insinuating appellant did not trust the jury's ability to identify the word "victim" as a reference to a complaining witness.

{¶ 110} Furthermore, even if appellant had objected to the statements in closing arguments there would be no error. A prosecutor during closing argument may comment on " 'what the evidence has shown and what reasonable inferences may be drawn therefrom.' " *Lott* at 165, quoting *State v. Stephens*, 24 Ohio St.2d 76, 82 (1970). Identifying L.A. or making a general reference to victims of abuse opening up over time in closing argument would constitute commentary on the evidence shown at trial and, therefore, would not be improper. Regardless, as both parties used the term it is hard to

identify what, if any, prejudice appellant suffered as a result. Moreover, while appellant also identifies some instances where his trial counsel used the word "victim" in voir dire and in his opening statement, appellant fails to demonstrate that this amounts to prejudice sufficient to satisfy the second prong of *Strickland,* namely that there is a reasonable probability that objection could have resulted in a different outcome of the trial.

{¶ 111} Appellant next argues counsel was ineffective for failing to ensure the trial court sealed confidential records. As set forth previously, " '[i]f an appealable issue arises during trial, appellant has a duty to proffer contrary evidence in order for the appellate court to have a record to review the issue. Correspondingly, appellant has a duty to ensure that all of the evidence considered by the court is entered into the record and transmitted to the court of appeals or to take action to correct or supplement the record pursuant to App.R. 9 if there is an error or omission.' " (Internal citations omitted.) *Smith*, 2017-Ohio-7740, at ¶ 25, quoting *Newman,* 2013-Ohio-414, at ¶ 7-8. Again, because the contents of the record are outside the record of proceedings before this court, it is impossible for this court to review appellant's allegations of ineffectiveness.

{¶ 112} Finally, appellant argues counsel was ineffective based on the cumulative error during the trial. "Under the doctrine of accumulated error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the instances of trial-court error does not individually constitute cause for reversal." (Citation omitted.) *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, ¶ 230, *overruled in part on other grounds*, *State v. Bates*, 159 Ohio St.3d 156, 2020-Ohio-634, ¶ 35. Errors that are harmless individually, when considered together, may violate a defendant's right to a fair trial. *State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, ¶ 61. However, " 'errors cannot become prejudicial by sheer weight of numbers.' " *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 211, quoting *State v. Hill*, 75 Ohio St.3d 195, 212 (1996). There is no doubt that appellant did not receive a perfect trial. The volume of alleged error in appellant's brief, however, is more of a statement of counsel's thoroughness than a reflection of prejudice to appellant. While we agree that appellant identifies several aspects of trial counsel's overall performance that could be considered deficient under the first prong of *Strickland*, we are nonetheless unable to find that appellant has demonstrated that, but for counsel's performance on these issues, the

outcome of the trial would have been different. Despite trial counsel's failure to object at various points in the trial, we do not find appellant can overcome the fact that L.A. testified clearly as to the nature of the sexual abuse, and her testimony was consistent with all the other evidence in the case. In light of L.A.'s testimony, we conclude appellant is unable to demonstrate the requisite prejudice under the second prong of *Strickland*. Therefore, trial counsel's actions as well as trial court error, cumulatively or in isolation, did not deprive appellant of his right to a fair trial.

{¶ 113} We overrule appellant's eighth assignment of error.

### I. Appellant's Ninth Assignment of Error

{¶ 114} In appellant's ninth assignment of error, he argues that there was insufficient evidence presented at trial and that the verdict was against the manifest weight of the evidence.

{¶ 115} The legal standard of sufficiency of the evidence "tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *Thompkins* at 386. Whether the evidence presented at trial is legally sufficient to support the verdict is a question of law, not fact. *State v. Fabal*, 10th Dist. No. 20AP-86, 2021-Ohio-1793, ¶ 20, quoting *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *Thompkins* at 386. When resolving whether the evidence is legally sufficient, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). In a sufficiency of the evidence analysis, "appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz* at ¶ 16, citing *Yarbrough* at ¶ 79-80.

{¶ 116} Conversely, while sufficiency of the evidence tests the adequacy of whether the evidence presented is legally sufficient to support the verdict as a matter of law, the standard of manifest weight of the evidence considers the evidence's effect of inducing belief. *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386. Even if there is sufficient evidence to support a verdict, a

reviewing court may still conclude that a judgment is against the manifest weight of the evidence. *State v. McCombs*, 10th Dist. No. 15AP-245, 2015-Ohio-3848, ¶ 3, citing *Thompkins* at 387.

{¶ 117} An appellate court reviewing a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for the most "exceptional case in which the evidence weighs heavily against the conviction." (Internal quotations omitted.) *State v. Cervantes*, 10th Dist. 18AP-505, 2019-Ohio-1373, ¶ 27.

{¶ 118} When considering a manifest weight of the evidence argument, the reviewing court may consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, this court is guided by the presumption that, " '[the jury] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Disagreement over the credibility of a witness is not a sufficient reason to reverse a judgment on manifest weight grounds. *State v. G.G.*, 10th Dist. No. 12AP-188, 2012-Ohio-5902, ¶ 7. Therefore, we give the jury's determination of witness credibility great deference. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55; *State v. Covington*, 10th Dist. No. 02AP-245, 2002-Ohio-7037, ¶ 28.

{¶ 119} In the present case, the jury found appellant guilty of five counts of rape in violation of R.C. 2907.02 and one count of kidnapping in violation of R.C. 2905.01. As set forth in R.C. 2907.02,"[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force. * * * Whoever violates this section is guilty of rape, a felony of the first degree." R.C.

2907.02(A)(2) and (B).  Pursuant to R.C. 2907.01(A), "[s]exual conduct" is defined in relevant part as "vaginal intercourse between a male and female; * * * fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(C) defines " '[s]exual activity' means sexual conduct or sexual contact, or both." Kidnapping is proscribed by R.C. 2905.01, which states in relevant part, "[n]o person, by force, threat * * * shall * * * restrain the liberty of the other person* * * [t]o engage in sexual activity, as defined in [R.C. 2907.01], with the victim against the victim's will." R.C. 2905.01(A)(4).

{¶ 120}  In the present case, L.A. testified to living with T.RL. and appellant for approximately three years before being removed in 2017.  L.A. described the house included two bedrooms, a bathroom, a basement, a living room, and dining room. Initially, the girls all lived in the same bedroom.  After about six months, L.A. was moved to the basement, and her sisters were not permitted to visit.  L.A stated the abuse started when she was 13 years old.  According to L.A., the first time was during movie night when appellant began to touch her body.  L.A. stated that appellant's actions progressed from oral sex to vaginal penetration with his penis.  L.A. testified that the first time occurred when she was cleaning her room in the basement. "[H]e climbed on top of me and he held my head into a pillow. That's when he started."  (Tr. Vol. II at 389.)  L.A. testified that this would occur in the basement when everyone was asleep, at school, or when T.RL. was at the doctor.  Appellant initially used a condom but stopped after he made L.A. get on birth control. According to L.A., appellant would force off her pants and underwear and hold her down by her arms onto the bed holding her head on the pillow.  L.A. testified that the sexual abuse would cause her pain and vaginal bleeding.

{¶ 121}  L.A. described other times appellant would perform oral sex on her stating, "he [would] put[] his mouth to [her] vagina or like my mouth is on his * * * penis." (Tr. Vol. II at 392.)  L.A. stated that the abuse primarily occurred downstairs and upstairs "maybe like twice."  (Tr. Vol. II at 393.)  On one of these occasions, L.A. stated appellant raped her vaginally with his penis while in the living room on the couch.  L.A. also testified that appellant on multiple occasions would use his hands to touch and penetrate her vagina.

L.A. noted that appellant has a scar on his stomach that runs horizontally below his navel. L.A. testified that this abuse continued until she was removed from the home to live with E.P.

{¶ 122} L.A.'s testimony is consistent with other witnesses at trial. T.RL. testified that she would seldomly go into the basement because of a foot injury. Both T.RN. and S.A. confirmed that they were not permitted to enter the basement and had to sneak down there to see their sister when appellant was not home. The testimony of a sole witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42, citing *State v. Dunn*, 5th Dist. No. 2008-CA-00137, 2009-Ohio-1688, ¶ 133. When considering the sufficiency of the evidence, "[t]he court essentially assumes the state's witnesses testified truthfully and determines whether that testimony satisfies each element of the crime." *State v. Davis*, 10th Dist. No. 18AP-921, 2019-Ohio-4692, ¶ 38, citing *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4. Here, L.A. testified appellant by force, or threat of force, restrained her for the purpose of engaging in sexual activity against her will. L.A. also stated that appellant compelled her to submit by force, or threat of force, to sexual conduct with her, through vaginal and digital penetration, cunnilingus, and fellatio. It was the province of the jury to assess the credibility of L.A. and to resolve which aspects of her testimony it found credible. After careful review of the record, considering the evidence in favor of the state, as required for a sufficiency of the evidence analysis, we conclude that the state presented enough evidence to support conviction for rape and kidnapping.

{¶ 123} As to the manifest weight of the evidence argument, appellant argues that other-acts evidence and improper bolster contributed to the conviction. As set forth in the first two assignments of error as well as the eighth assignment of error, much of these statements provide some permissible purpose and, even outside those statements, there is clear evidence of guilt against appellant in this case.

{¶ 124} Appellant argues that the case comes down to L.A.'s credibility as she did not discuss any of the allegations prior to her disclosure to E.P., with her sisters, school officials, T.RL., or G.B. Appellant argues that L.A.'s credibility is questionable given the testimony from her and her sisters compared to T.RL. as to their home life, care of the girls, and the decision to get birth control. Appellant also notes that there was no physical

evidence in the case and Dr. Letson could not substantiate or confirm any of L.A.'s allegations based on her physical examination alone.

{¶ 125}  A lack of physical evidence, alone, does not sustain a conviction against a manifest weight challenge.  *State v. Flores-Santiago*, 8th Dist. No. 108458, 2020-Ohio-1274, ¶ 37, citing *State v. Rusnak*, 7th Dist. No. 15 JE 0002, 2016-Ohio-7820, ¶ 30; *Thomas* at ¶ 25.  Furthermore, the jury was presented with testimony by T.RL. as to L.A.'s motivations and desire to move back with her and appellant after the girls were initially removed from the home.  The jury heard from the other sisters as to their lack of knowledge of the sexual abuse until L.A.'s disclosure to E.P.  It is within the trier of fact to determine the credibility of L.A. and the other witnesses.  In a manifest weight review, an appellate court must "bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses." *State v. Mickens*, 10th Dist. No. 08AP-626, 2009-Ohio-1973, ¶ 30.  We find that the jury is in the best position to determine the credibility of L.A. by considering her manner and demeanor, as well as any inconsistences in her testimony.  Accordingly, we cannot conclude this case presents a scenario where the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.

{¶ 126}  For the foregoing reasons, we conclude that appellant's convictions of rape and kidnapping were based on sufficient evidence and not against the manifest weight of the evidence.

{¶ 127}  Accordingly, we overrule appellant's ninth assignment of error.

## IV.  CONCLUSION

{¶ 128}  Having overruled appellant's nine assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur.

_____